Good morning. May it please the Court, Todd McLaurin on behalf of the Plaintiff. This case concerns the pleading requirements for what is necessary to state a claim under the unlawful prong of the California Unfair Competition Law, or the UCL. In this case, the unlawful act, the predicate act here, does not involve deception. And that is really what the crux of the case is about, and that's where we contend that the District Court erred. The Plaintiff alleged that the defendant sold a skin lotion that required a new drug application to be filed in order for it to be lawful, for that product to be sold. That's the unlawful act. The Plaintiff sued under the California Unfair Competition Law saying that's the unlawful act. The Plaintiff has a loss of money because she purchased a product and she was unable to, had the product not been sold, which it would not have been had they followed the law, and therefore they state a claim. What happened here is the District Court relied on cases involving the Unfair Competition Law that, as a predicate unlawful act, involved a fraud claim. The way I understand your argument and your contention, it seems like, are you, just tell me if I'm wrong or what your understanding is, it seems like the Plaintiff alleged several times in the second amended complaint that Nivea lotion is misbranded, and that if she had known the lotion was illegal, she would not have purchased it. So why is that not a misrepresentation allegation? That's not the theory of the case now. That was the theory of the case originally, or Nivea skin lotion without an NDA. And that predicate unlawful act is all that needs to be stated in order to sue under the UCL for an unlawful claim. Well, let me ask you a question on your theory. If I went into a pharmacy meaning to buy Moisturell and I picked up Nivea by mistake, I came home and I kept the bottle of Nivea, do I have a cause of action against the manufacturers of Nivea under your theory? You do, because you purchased the product. That's different from the old days prior to Prop 64 when somebody who didn't purchase a product could make the claim. That's where we kind of evolved in the standing argument. The whole reason the standing requirement got there was to keep strangers from coming in who had no contact with the company and never purchased Nivea. In this situation, if you've purchased the product and it's unlawfully sold, you have a standing to bring a claim. It doesn't mean you're going to win. It means you have standing to satisfy the question. Well, what do I have to do to win? To win, you're going to have to prove. What do I have to prove? You're going to have to prove it was unlawfully sold. You're going to have to prove the underlying predicate act. So you're going to have to prove that, in fact, a new drug application was required. If you can't prove that, you'll lose. There's a series of California cases having to do with this reliance element, which is what you just touched upon, and that's the reason Judge Burns dismissed the case. He looked at the Kwikset case, which is a California Supreme Court case from 2011. That involved deception about a made-in-the-USA claim. It was basically a false advertising claim. That was the claim under the UCL. There was deception involved in that claim. The next evolution by the California court was a California appellate decision called Madraza in 2012. In that case, there was a UCL unlawful claim. That was the case about the motorcycle hanger tag, where the defendant had failed to comply with a vehicle code that certain disclosures had to be made about the MSRP of the motorcycle and associated charges. In that case, the court, the trial court dismissed the case and said, you don't have any reliance. And the California appeals court said, no, you don't need to have reliance when it's an unlawful claim. The predicate act was a vehicle code. There's no deception or fraud involved in that vehicle code violation. In this context, can you describe to me the difference in the standing concept between causation and reliance? You have to prove causation, correct? Yes. So how in this context do causation and reliance differ? Reliance is that you would have to say, I relied upon the representations that were being made on the product when I bought it in order to have reliance. To have causation, you have to have an injury traceable to the conduct. Here, it's loss of money. The plaintiff purchased the product. It otherwise would not have been on the market, but for the unlawful act. And that's proximate causation. Why would it not have been on the market, but for the unlawful act? That's because you have to prove a misrepresentation, right? So don't we get back to proving a misrepresentation? No, you do not have to prove a misrepresentation. There's not a misrepresentation at all. There's a label involved. That just happens to be the triggering event for why a new drug application has to be filed. But there's what they say can be perfectly true. In fact, it's fine if it's true. The trigger for a new drug application is we allege they're making a claim about the structure or function of the skin, and that's what they're changing. That can be true. And if, in fact, that is true, and it does change the structure or function of the skin, a new drug application had to be filed, and they admittedly didn't do that. That's unlawful. So there would be no representation in that case. Counsel, Judge Gould, if I could interject a question. Could you at some point address the amount in controversy, the issue that's presented to us? Yes, Your Honor. In the original complaint, which is what governs for purposes of making a jurisdictional finding, and that's a United States case, we had a California class and got down to the second amended complaint. We were down to a California class, and Judge Burns' sua sponte said, well, wait a minute. I don't think there's any plausibility here that there's been 500,000 purchases. And we think that was a mistake for a couple of reasons. Is it just because he didn't consider the allegations in the original complaint? Do you agree if he appropriately just considered what was in the second complaint that you haven't plausibly alleged diversity? Or I know that you'll argue it's a different standard. But assuming that we just rely on the second complaint, have you alleged the requisite amount of money without going back to the first complaint? Yes. And importantly here, it's not 5,000 purchasers. It's 5,000 purchases. This is a product that is designed to be bought repeatedly. So if you had 50,000 people buying this ten times, you'd have $5 million. And in fact, I think the best evidence of that is the defendant says in their papers, if we were in state court, they would promptly remove the case. So they lack any evidence. In fact, I think they have evidence in order to support that statement. Well, they want to be in federal court, so then I can argue with you about this, right? Well, yes, they made a statement that says they would remove the case. They have to have a good faith basis to do that. But did you in your brief, didn't you point us back to the original complaint? We did because that's what governs. But it doesn't govern. On your other argument, you say you don't go back to that original complaint. When counsel said you talked about misrepresentations in the original complaint, you say, oh, but we don't consider the original complaint. Now on this issue, you say, yes, we go back and consider the original complaint. Isn't that at odds with one another? No. That's what the law is. When you're deciding jurisdiction, jurisdiction decides at the time you file the case with a few exceptions. So is your, because I just want to make sure I understand, you're saying that we do go back to, or the judge needs to go back to the original complaint. But in your case, you submit that he didn't need to, that you submitted enough evidence in your, or allegations in your second amended complaint. With respect to jurisdiction, and because the standard is legal certainty, there has to be a legal certainty that we cannot meet the jurisdictional amount. And the judge basically applied a plausibility standard, sui sponte. In fact, I would submit that the proper thing to have done, if there really had been a question about that, and by the way, the parties hadn't briefed that, was to have some very easy to have briefing or have limited jurisdictional discovery in that exact issue, and that could have been resolved. Instead, the judge, sui sponte, dismissed it on standing grounds. And the judge never reached the issue of the plausibility of your drug allegations, correct? Correct, Your Honor. And is that something that we should decide at this point, that you've plausibly alleged that it's a drug, or is that something that should go back to the district court for resolution? I think you can decide that here, even though the judge didn't decide it. We think we've certainly plausibly alleged that. We've made allegations that spell out why a new drug application needed to be filed. We cited FDC guidelines. We cited an Avon warning letter. We then cited two more warning letters that show there's at least some support for the notion. Again, it doesn't mean we're right. We're just trying to be plausible at this stage. Isn't whether a product is a drug, it seems like it's based on its intended use, and that seems pretty fact-intensive. I mean, would that be appropriate for the circuit court to review that in the first instance, really? It wouldn't be appropriate to decide the merits of that type of thing. We think plausibility is a fact question, but we think we meet the minimal standards to plead that. So in other words, I don't think it makes sense to remand the case and then have a plausibility argument from the district court judge on the pleadings again. I think we'll just be going back in a circle. So that's what I mean by I think the Ninth Circuit can decide that. But it's very much a fact question. Do you want to reserve the balance of your time? Yes. Okay.  Good morning, and may it please the Court, Alicia Dagan for Defendant and Appellee, Beyersdorf, Inc. This case was properly dismissed for two reasons. First, Plaintiff Franz does not plausibly allege that she purchased the Nivea lotion as a result of defendants selling it with affirming statement that was not FDA approved, and she thus does not allege standing under the UCL. And second, she fails to plausibly allege that the lotion is unlawfully sold as an unapproved drug. Counsel, Judge Gould, if I could ask you a question. Let me just try to cut right to the chase. Why isn't the issue here on a mountain controversy, whether the St. Paul Mercury Indemnity Supreme Court case or the Ninth Circuit Loudermill case, make the standard whether the plaintiff alleged the amount in controversy in good faith, and that you have to show to a legal certainty that it's less than the amount alleged? Your Honor, two points. First of all, as a factual matter, Beyersdorf agrees that the $5 million amount in controversy is met in this case. And if the court were to send us back to the district court, we would be able to make the necessary factual showing under either the earlier complaint or under the second amended California only complaint. We can make that factual showing. With respect to the standard, as your Honor is aware, since the Loudermilk decision, this court has issued its decision in Ibarra, and we also have Iqbal and Twombly that have clarified the pleading standards that do require a plausible allegation of jurisdiction, just like any other pleading requirements. So the Loudermilk standard, I believe this court has indicated that that standard no longer applies. But we do believe that in this particular case, the amount in controversy is met. And as I noted, we could make the necessary showing. So what's the case in which you think we've said Loudermilk standard does not apply now? I think the court's decision in Ibarra indicated that Loudermilk, in light of Dark Cherokee and I believe it was Standard Fire, that those did affect at least on the removal side of the Rule 8 pleading standard and the pleading standard under the removal statute were similar. And given the pleading standards requiring that a claim be stated, you allege facts to state a plausible claim, we would suggest that the Loudermilk standard is not the current standard that's being applied. We would agree with my colleague that in this circumstance, if the court had had a question about whether there was the amount in controversy had been satisfied, that it would have been appropriate to ask for further briefing. Because we, defendant did not dispute that the amount in controversy had been satisfied. And as I noted, defendant could have made the necessary showing or it could have been developed through discovery. I just want to make sure I understand, you didn't dispute it below, and I know the district court did this as a sponte, but are you disputing it now? I'm just not clear. No, we agreed that the amount in controversy has been satisfied here. And if we needed to make the necessary factual showing on remand, we could do that and would do that. Okay. If the district court relied on a conclusion to a sponte that the amount in controversy wasn't satisfied, then why doesn't this case necessarily have to go back to the district court? What else remains? I believe that the allegations that were in, Your Honor, I will need to look at closely again at the second amended, at the original complaint. But I do believe that under the complaints that were alleged, they alleged that the cost of the lotion was $10 a bottle. And as counsel noted, to reach that, it's a question of 50,000 bottles having been sold. California alone is a very large state. And I think that given, when you read the complaint as a whole, that there were facts alleged in there that would allow a reasonable conclusion that the amount in controversy had been satisfied. The court on the dismissal of the second amended complaint expressed, noted that the complaint had been narrowed to a California only class and was expressing skepticism as to whether there had been enough lotion sold. But again, as counsel noted, it would be 50,000 bottles at $10. I'm sorry, 500,000 bottles at $10 a bottle. California is a large state and we could make that showing if we needed to. I don't think we do. I think this court can affirm the dismissal on the record that we have. But if needed, we could make the necessary showing. And the basis for affirming the dismissal, you're saying is that although the court made a mistake on amount in controversy, the dismissal is correct based on what other theory supported by the record? Your Honor, we believe that the court correctly concluded that the plaintiff did not allege standing. We also believe that the plaintiff fails to plausibly allege that the lotion is unlawfully sold as an unapproved drug. But I think the lack of standing here is relatively clear. How do you distinguish the Madrazo case on which your adversary relies? That it's just an unlawful act and if you buy something that's unlawful, that gives you standing? Certainly, Your Honor. And that's certainly what the plaintiff has argued, that this lotion was sold unlawfully and that she bought it. But even the Madrazo case recognizes that there needs to be something to connect the unlawful conduct and the purchase decision. And Madrazo is actually one of the sort of classic unlawful prong cases where it's dealing with an unlawful charge. So in that case, the dealer was not allowed to impose certain charges unless there was a hang tag. And there was no hang tag. The charges were imposed. The plaintiff paid them. That's where you get into the sort of classic unlawful claim where you don't have a representation. Another example is the Moran case where you had an unconscionable clause in an emergency room contract. You also see this in, for example, interest rate cases where the interest rate is unconscionable. You can use the unlawful prong to get the interest back. But counsel argues here that they sold a drug, the drug was unapproved, so she bought an unapproved drug. And that's the unlawful act. Why doesn't that follow? Or why isn't it similar to Madrazo? Sure. Well, the courts in California recognize repeatedly that the burden of pleading causation needs, it depends on the nature of the alleged wrongdoing. And here, it all goes back to the alleged representation on the label. Without that representation, there would be no claim that this lotion was unlawfully sold. There's no claim that the lotion itself is unlawful or that it contains an unlawful ingredient or that it is somehow harmful. It all goes back to the representation. And that's what the claim hinges on. And without the allegation of a representation, there would be no complaint at all. So in those circumstances, we think that whether it's a question of the representation being false, but where the representation is at the center of the claim, that the route to causation is going to have to go through that representation. But is that at the center of their claim? I mean, I think this argument seems kind of circular to me because I think you're arguing that plaintiff fails to rely on the representations and was in turn, I guess, deceived. But I mean, the plaintiff is alleging that this was an unlawful procedure and that ended up being the mislabeling that occurred. Not that this was a fraud or a deception in that way. It was unlawful and therefore mislabeled. I'm just trying to figure out. It seemed like they're very mixed and I'm having a hard time distinguishing this from Madrazo. Your Honor, I think that what we have here is the representation. Take one step back. Even where you have an unlawful claim, it's not enough for a plaintiff to just buy the product and say it was unlawfully sold. Because she has to link it to, why was it unlawfully sold? She has to link it to the conduct. So any time it was unlawful, it always has to be this branding or some sort of deception going on. What we see in Madrazo is a case where there was not deception. Can't you have a pure unlawful case here that resulted in mislabeling? But that's not what their focus is on. It seems rather clearly now that they're focusing on the unlawful claim that it's not really a fraud claim. And I'm just trying to figure out how do we unpack this at this point, giving you an opportunity to tell us why it only has to be a fraud claim. Well, Your Honor, it doesn't necessarily have to be a fraud claim. But their entire claim turns on this representation, that there was a firming representation made on the label. And without that firming representation, there would be no claim. Again, this lotion can be sold. The question is whether it could be sold with a firming representation. It's just what would the label say? And so this is a labeling case. And I think if you think about other unlawful prong cases, you could have an unlawful prong case where the underlying unlawful conduct is a false advertising violation. And you have to be able to link to the particular conduct. And here, again, it is selling a lotion with a statement on the label that was not FDA approved. Would a Madrazo case, in your view, be something like selling a product with a dangerous level of chemical in it? Would that be a Madrazo case? Well, I see Madrazo as a... No misrepresentation. It's just that this particular product, when it went through the assembly line, somebody dropped hydraulic acid into it or something like that. Would that be the Madrazo case? If there were something in this lotion that were illegal to sell at all, that would be a different case and would bring it to one of the unlawful charge cases like Madrazo. Here, what is the challenge conduct is what's on the label. It's a labeling case. And the we said it was affirming lotion without getting that statement, FDA approved.  But the plaintiff's claim doesn't seem to rest on a deception. It seems to focus on the illegality. So I'm just trying to figure out what we do with that. Sure. So she's disclaimed the deception. That was the last complaint in this one. She's now disclaimed it. But her claim still turns on the label. She says that she's not going to... We made a statement on the label without getting it FDA approved. And to be able to make a causal link between that conduct, making the labeling statement, and her purchase decision, she's got to allege a connection to the labeling statement. And we think that under the cases, whether it's in terms of misrepresentation or not, where your claim is based on... But do you agree, I'm sorry to interrupt you, that this is not the classic, I was deceived into buying this. She's not saying she was deceived. So that's what makes this a little bit different. It seems like plaintiff's allegation is that the defendants here, Nivea, violated the law by either misbranding, mislabeling, the term that's used there, and illegally selling Nivea Lotion. Not that she was deceived into believing the lotion was properly labeled or that it was a lawful product. So doesn't that seem a little bit different from what you're focused on and the cases that you're relying on? I agree this is a little bit of a different case, but I think the underlying principle that you have to connect your economic loss to the alleged unlawful conduct carries through here. And she alleges in her complaint, this is paragraph seven, that had she known the lotion was an illegal and misbranded drug, she would not have purchased it. And as a matter of fact, she lost money. But there are no facts in this complaint that link her purchase to the representation or that it somehow affected what she knew about the approval status of this particular product. What we need to see from her is that there was something that connected her purchase to this unlawful label, and that is something that's missing from this complaint, and we don't think that she can allege. I know you're out of time. I'm just going to ask one last question, at least for myself. If we do conclude that the district court has jurisdiction in this case, I just want to get your take and your view on whether or not we should remand for the district court to consider the 12 v. 6 arguments in the first instance, or if we should do it. Your Honor, I think that this court could consider them. It's a pleading question whether the plaintiff has plausibly alleged that this drug is, I'm sorry, that this lotion is an unapproved new drug. All that is in this complaint is the allegation of a labeling statement, and citation to an FDA guidance, and a warning letter that on their face do not support the plaintiff's claim here, and then a conclusory statement that the lotion is a drug. We do not think that that is enough for her to plausibly allege a claim here, and we do agree that the court can address that. Let me see if anybody else has any questions. Well, you know, I have one question or comment. I certainly agree that we would have the power to address it if we wanted to, but am I correct that the district court didn't rule on the 12 v. 6 allegation? And if that's true, and we're a court of review and not a court of just instance, then why doesn't it make sense for us to send it back to the district court? Your Honor, you're correct. The district court did not reach the question of whether the plaintiff had plausibly alleged that this body lotion is a drug. But given that the standard of review is de novo, and this court can't affirm the dismissal on any grounds supported by the record, we believe that this court could take a look at it here in the first instance. Okay. Well, thank you very much. Thank you. Thank you. Thank you very much. With respect to plausibility, once you get into whether or not a new drug application had to be filed, that's going to be a fact question. That's the Estee Lauder case. That's the Reed case. All we're saying is we think we've adequately pled that the failure to acquire FDA approval was an unlawful act, and we think that's sufficient. But you have to plausibly allege that approval was required, that these representations were of a kind that would have required approval. You've got to plausibly allege that. And we believe we do that, and we cited even a step further than that, and cited the FTC guidelines and FDA warning letters suggesting we're right. The defendants say we're wrong about that, but that's going to be a merit argument, not a plausibility argument. Let me ask you one question. If we were to determine that it was necessary that you pled reliance, could you do that? We could plead reliance that the plaintiff believes she purchased a product that was the district court suggested had to do with the representations were read, and the plaintiff then made a conclusion that that meant a new drug application had been filed and that sort of detailed non-labor analysis. That we could not meet. Just quickly, to step back to Madrazo, and we think there's no daylight between Madrazo and this case, we couldn't find another California state court decision after Madrazo that was directly on point. However, there are two Northern District California cases that we do believe are on point that we cited in our papers, the O'Connor case and the Gertzon case in which UCL unlawful claims were stated and the court said no reliance was necessary. In the O'Connor case, which is the one involving the Uber tip policy, the predicate unlawful act was a labor code violation. In the Gertzon case, which involved hidden penalties and life insurance policies, the predicate unlawful act was a violation of insurance code. Once those were pled and then an unlawful claim was based upon that, those courts found no reliance was necessary following the logic of Madrazo. And then finally, the Ninth Circuit themselves had one case in the Bruton matter, non-presidential opinion, that's the baby food nutrient case. That's not a standing case, though, is it, counsel? Well, it's not a standing case, but it's interesting what happened in that case. It doesn't mention the word standing, but the predicate act in that case was a violation of the Sherman law and the FDCA, which is what we had here, and the defendant got survey judgment and the case got reversed. It wasn't even discussed. It was almost, well, of course, they're standing here. But the court did not go that far expressly, and I think that's why we're here today, because the court did not elaborate upon that. If there's no further questions, I don't have anything else. No questions here. Thank you very much. Mr. Deegan, Mr. McLaughlin, thank you very much for your oral arguments here today. The case of Ashley Franz v. Biersdorf is submitted.
judges: Gould, Murguia, Amon